## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 26 2015, 9:08 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John Andrew Goodridge
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry Lefler, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | February 26, 2015 <br><br> Court of Appeals Case No. <br> 82A05-1408-PC-407 <br><br> Appeal from the Vanderburgh Circuit Court. <br> The Honorable David D. Kiely, Judge. <br> The Honorable Kelli E. Fink, Magistrate. <br> Cause No. 82C01-1210-PC-23 |

**Darden, Senior Judge**

## Statement of the Case

[1] Larry Lefler appeals the denial of his petition for post-conviction relief. We affirm.

# Issue

Lefler raises one issue, which we restate as: whether the post-conviction court erred in determining that Lefler failed to prove that he received ineffective assistance of trial counsel.

# Facts and Procedural History

We incorporate the facts from Lefler's original appeal, as follows:

> Ker.L. was born on February 19, 1994. Thereafter, Lefler established paternity and sporadically exercised visitation rights.
>
> Kel.L. was born on July 28, 1994. Kel.L.'s mother and Lefler married in October of 1998. In 2000, Lefler adopted Kel.L. Lefler and Kel.L.'s mother divorced in 2002, after which Kel.L. visited Lefler approximately three weekends per month.
>
> Generally, Ker.L. only visited Lefler during his visits with Kel.L. Visitation usually took place at Lefler's parents' residence, where Lefler lived. During the visits, Ker.L., Kel.L., and Lefler slept in Lefler's bedroom and all three often slept in the same bed or on the floor together.
>
> When Ker.L. was twelve years old, she and Lefler went to sleep on the floor of his bedroom. When Ker.L. woke during the night, she felt Lefler's 'finger . . . in [her] vagina.' (Tr. 104). Ker.L. pushed Lefler's hand away, got up, and went to the bathroom. She then went to sleep in another room. 'Some time later,' Ker.L. told Kel.L. about the incident but promised Kel.L. she would not report it because Kel.L. 'was scared.' (Tr. 105).
>
> When Kel.L. was in the fifth grade, Lefler gave her a blue pill, claiming it was a vitamin. After taking the pill, Kel.L. became 'really tired' and fell asleep. (Tr. 158). Kel.L. later woke up to find Lefler 'pulling down [her] underwear.' (Tr. 158). Lefler 'pulled [her] closer to him,' so they were lying face-to-face on their sides. (Tr. 159). Lefler then put his 'private' on her 'privates,' (Tr. 154), and moved 'forwards and backwards.' (Tr. 161). This occurred '[a]t least' one other time. (Tr. 162).

On October 20, 2009, Ker.L. told her mother, Crystal Elderbrook, that Lefler had molested her.

\* \* \* \*

On January 5, 2010, the State charged Lefler with Count 1, class A felony child molesting; Count 2, class A felony child molesting; and Count 3, class C felony child molesting. The trial court commenced a three-day jury trial on March 29, 2010.

\* \* \* \*

The jury found Lefler guilty on all counts.

*Lefler v. State*, Cause No. 82A04-1007-CR-479, at 1-2 (Ind. Ct. App. July 13, 2011).

[4] Lefler appealed his convictions, claiming that the trial court erred in excluding evidence that it had deemed to be inadmissible hearsay. The Court affirmed the trial court's judgment, concluding that Lefler had waived his claim and, in any event, the trial court did not err in excluding Lefler's tendered evidence. *See id.* at \*2-3.

[5] Next, Lefler filed a petition for post-conviction relief, alleging ineffective assistance of trial counsel. The post-conviction court held an evidentiary hearing on Lefler's claim. Trial counsel did not testify at the hearing. The court determined that Lefler's claims were without merit and denied his petition. This appeal followed.[1]

---

[1] We note that Appellant has included the post-conviction transcript in his Appendix. The transcript is transmitted to the Court pursuant to Indiana Appellate Rule 12(B), so parties should not reproduce any portion of the transcript in the Appendix. *See* Ind. Appellate Rule 50(F).

# Discussion and Decision

[6] Lefler argues that the post-conviction court erred in rejecting his claim of ineffective assistance of trial counsel. A post-conviction proceeding is not a substitute for a direct appeal and does not provide a petitioner with a "super-appeal." *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). The post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Id*.

[7] Post-conviction proceedings are, by nature, civil proceedings in which the petitioner must establish grounds for relief by a preponderance of the evidence. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. On appeal, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind. 2010).

[8] Claims of ineffective assistance of counsel are evaluated using the *Strickland* standard articulated by the United States Supreme Court. *Wilkes*, 984 N.E.2d at 1240. The standard has two elements. First, a petitioner must demonstrate that counsel performed deficiently based upon prevailing professional norms. *Id.* Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). In fact, counsel's performance is presumed effective, and

a petitioner must offer strong and convincing evidence to overcome this presumption. *Kubsch*, 934 N.E.2d at 1147.

[9] Second, a petitioner must establish that counsel's deficient performance resulted in prejudice to the petitioner. *Wilkes*, 984 N.E.2d at 1240. That is, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 1241. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* An inability to establish either deficient performance or prejudice is fatal to a claim of ineffective assistance. *Rowe v. State*, 912 N.E.2d 441, 443 (Ind. Ct. App. 2009), *aff'd on reh'g*, 915 N.E.2d 561 (2009), *trans. denied*.

[10] We note that the judge who presided over Lefler's original trial is also the judge who presided over Lefler's post-conviction hearing. In such a case, the post-conviction court's findings and judgment are entitled to greater than usual deference because the judge is uniquely situated to assess whether trial counsel's performance was deficient and whether, but for counsel's unprofessional conduct, there was a reasonable probability that a different verdict would have been reached. *McKnight v. State*, 1 N.E.3d 193, 200 (Ind. Ct. App. 2013).

[11] We further note that Lefler did not present testimony from his trial counsel at the post-conviction hearing. Although he told the post-conviction court that he had subpoenaed trial counsel, counsel did not appear. Lefler did not ask the court for a continuance or a body attachment, and he presented no evidence from trial counsel by way of affidavit. When trial counsel does not testify in

support of a petitioner's arguments, the post-conviction court may infer that counsel would not have supported petitioner's allegations. *Oberst v. State*, 935 N.E.2d 1250, 1254 (Ind. Ct. App. 2010), *trans. denied*.

[12] Lefler first argues that his trial counsel failed to conduct a full and adequate factual investigation. Establishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what information an investigation, if undertaken, would have produced. *McKnight*, 1 N.E.3d at 201. Further, the petitioner must show how the additional information would have aided in the preparation of the case. *Turner v. State*, 974 N.E.2d 575, 585 (Ind. Ct. App. 2012), *trans. denied*.

[13] Lefler asserts that his counsel did not interview Donovan Madison, who is the son of Lefler's then-fiancée, Debbie Lefler, until a few days before trial. He fails to explain how the delay in the interview prejudiced him, so this claim must fail.

[14] Lefler further asserts that his counsel erred by failing to interview anyone listed on Lefler's witness list except for Lefler, Debbie, and Madison. However, Lefler's witness list stated only that the other witnesses would testify "concerning the behavior of the children since the day of the alleged incident." Appellant's App. p. 416. Furthermore, during the post-conviction hearing, Debbie testified that Mary Lefler, Richard Lefler, Bill Martin, Michael Whoeler, Donald Standing, Mindy Marx, Jeremy Morris, and Amanda Morris, who were on the witness list, would have testified at trial only that "the children

weren't acting unusual during" the times when the molestations occurred. Tr. p. 85. On cross-examination, Debbie conceded that none of those witnesses were eyewitnesses to the acts of molestation. At the original trial, counsel had cross-examined Ker.L. and Kel.L. about their attitudes toward Lefler and their behavior before and after being molested. We cannot conclude that counsel made an unreasonable strategic choice by declining to interview witnesses who had, at best, general knowledge about Ker.L. and Kel.L.'s behavior at the time the crimes were committed, particularly when counsel was able to cross-examine Ker.L. and Kel.L. on that subject. This evidence is insufficient to rebut the presumption of effective assistance. *See Villalon v. State*, 956 N.E.2d 697, 706 (Ind. Ct. App. 2011) (appellant did not demonstrate that counsel performed deficiently by failing to present alibi defense), *trans. denied*.

[15] Lefler next argues that his trial counsel failed to call witnesses at trial who would have undermined Ker.L. and Kel.L.'s credibility. A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess. *Johnson v. State*, 832 N.E.2d 985, 1003 (Ind. Ct. App. 2005), *trans. denied*.

[16] Lefler claims his counsel should have called Donovan Madison to testify about text messages he sent to, and received from, Kel.L. after Kel.L.' s accusations became public, because the messages would have shown Kel.L. was biased against Debbie and wanted to sabotage her relationship with Lefler.

[17] The text messages do not undermine Kel.L.'s credibility. Although she told Madison she hated Debbie, she also stated several times that she loved Debbie and did not want to see her hurt. Furthermore, admission of the text messages into evidence could have damaged Lefler. At one point, Madison texted Kel.L that he hoped Lefler "takes the Plead [sic] deal. . . .it'll only be 5 years." Ex. Vol., Ex. 2. If the jurors had seen that statement, they would have been made aware of plea bargaining and might have speculated that Lefler was prepared to admit guilt. Under these circumstances, failing to call Madison to testify was not an unreasonable decision.

[18] Lefler also claims that trial counsel should have called Crystal Elderbrook to testify that she urged Debbie to end her relationship with him. Elderbrook, who is Ker.L.'s mother, was hostile to Lefler's defense. During her cross-examination at Lefler's original trial, she disagreed with the majority of Lefler's counsel's questions and rejected his characterizations of events. In addition, Elderbrook did not testify at the post-conviction hearing. It is unclear that Elderbrook would have agreed that she had a conversation with Debbie about her relationship with Lefler or that, if she agreed that such a conversation had occurred, it would have affected the outcome of the trial.

[19] Lefler next argues that his trial counsel should have called Justin Lefler to testify because Justin would have told the jury: (1) he would have known if Lefler had molested Ker.L. and Kel.L. because he has a sleep disturbance and stays awake at night; and (2) he once saw Lefler sleeping in a bed with Kel.L., and when Lefler accidentally hit her in his sleep, she got out of bed and kicked

Lefler. Justin did not testify at the post-conviction hearing, and there is no information in the record on how often Justin slept at Lefler's residence, where he slept, and whether he would have noticed the acts of molestation as described by Ker.L. and Kel.L. Further, Justin's generalized description under the circumstances of one alleged act of kicking by Kel.L. of Lefler appears to have minimal relevance to the crimes at issue here. Lefler has failed to carry his burden of proving that choosing not to call Justin was objectively unreasonable.

[20] Next, Lefler claims that his trial counsel failed to adequately impeach Ker.L. and Kel.L. on a number of topics that he claims would have undermined their credibility in the eyes of the jury. Specifically, he says counsel should have impeached Ker.L. by asking her whether she was mad at Lefler prior to reporting the molestation because he would not buy her a car or tanning salon sessions, and counsel should have impeached both Ker.L. and Kel.L. by asking whether they were angry that Lefler intended to marry Debbie. Appellant's Br. p. 20. However, at trial, Lefler's counsel cross-examined Ker.L. and Kel.L. on those issues. Appellant's App. pp. 477, 483-84, 535, 543, 545. He has failed to establish deficient performance on this point.

[21] Next, Lefler argues that his trial counsel should have cross-examined Kel.L. about: (1) the questions she asked Debbie when Debbie disclosed to Kel.L. that she had been molested as a child; and (2) about Kel.L.'s tendencies to sabotage Lefler's romantic relationships. In fact, Lefler's counsel asked Kel.L. about those subjects on cross-examination. Appellant's App. pp. 537, 543, 545. Thus, counsel brought those issues to the jury's attention. Further questioning

of Kel.L. on these issues could have been seen by the jury as unfair badgering. We cannot say counsel performed unreasonably. *See Thomas v. State*, 965 N.E.2d 70, 76 (Ind. Ct. App. 2012) (counsel effectively impeached the State's witness by causing the witness to admit to inconsistent statements), *trans. denied*.

[22] Lefler also claims his trial counsel should have impeached Kel.L. about an incident where a friend of hers walked in and her dad "had yelled at the friend." Appellant's Br. p. 20. It is unclear, and Lefler fails to clarify, how this incident was relevant and would have impeached Kel.L. Furthermore, testimony about the incident could have worked against Lefler, as it could have caused the jury to view him in a negative light. Counsel was not ineffective for refraining from questioning Kel.L. on this subject.

[23] Lefler also asserts that his trial counsel erred because, when the trial court sustained the State's hearsay objections to testimony by Lefler and Debbie, counsel did not submit offers of proof. Lefler asserts that counsel's error was crucial and unreasonable because, on direct appeal, the Court determined that his challenges to the exclusion of the hearsay evidence were waived. He further argues that counsel should have called Ker.L., Kel.L., and Elderbrook to the stand to ask them the questions that the trial court forbade Lefler and Debbie to answer about those persons' statements.

[24] Debbie attempted to testify about: (1) questions that Kel.L. had asked her when Debbie disclosed that she had been molested as a child; and (2) statements by Kel.L. to the effect that she did not approve of Debbie and Lefler's relationship.

Counsel's failure to submit offers of proof regarding these statements did not amount to ineffective assistance for two reasons. First, after the objections were sustained, counsel rephrased his questions to present the information to the jury through Debbie without running afoul of the hearsay rule. Appellant's App. pp. 559-60, 571. Second, as noted above, trial counsel did cross-examine Kel.L. on those subjects. Thus, the evidence was presented to the jury, and Lefler cannot have been prejudiced by counsel's failure to present offers of proof.

Regarding Lefler's testimony, he attempted to testify to statements made by Elderbrook and Ker.L. regarding visitation problems and to statements made by Ker.L. when Lefler refused to buy her a car and sessions at a tanning salon. However, Lefler's counsel cross-examined Ker.L. about the car and tanning sessions, and he cross-examined Kel.L. about visitation issues between Ker.L. and Lefler. Appellant's App. pp. 484, 539-40. We cannot conclude that counsel prejudiced Lefler by failing to tender offers of proof when counsel presented the same evidence to the jury through other witnesses.

Lefler has failed to carry his burden of proving that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.

## Conclusion

For the reasons stated above, we affirm the judgment of the post-conviction court.

Affirmed.

Crone, J., and Pyle, J., concur.